UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>RAUF MUHAMMAD,<br>Defendant. | No. 3:02-cr-14-02<br><br>Judge Jordan |

**RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION FOR COMPASSIONATE RELEASE**

Muhammad asks this Court to reduce his sentence to time served or 240 months' imprisonment in light of the First Step Act, § 401, Pub. L. No. 115-391, 132 Stat. 5194 (2018). (Doc. 254, Motion.) The United States responds, as ordered by the Court. (Doc. 255, Order.)

The Court has authority to consider the motion because 30 days have passed since the warden received a request for release from Muhammad. (Doc. 254-1, Exhibits at 2-3.) But Muhammad has not established that a sentence reduction would be consistent with U.S.S.G. § 1B1.13 and 18 U.S.C. § 3553(a). Accordingly, his motion should be denied.

**Factual and Procedural History**

Between 1997 and 2002, Muhammad supplied and otherwise facilitated the distribution of kilogram quantities of cocaine; among other things, he repeatedly traveled to Atlanta, Georgia, and obtained at least 20 kilograms of cocaine for a co-conspirator to resell in eastern Tennessee. (Doc. 208, Memorandum Opinion at 6 (reproducing the factual basis from the guilty plea.)) He also obtained and sold quantities of crack cocaine. (*Id*.) He pleaded guilty to conspiring to distribute and possess with intent to distribute at least 5 kilograms of cocaine hydrochloride and at least 5 grams of cocaine base. (*Id*. at 2.) And he specifically admitted he was responsible for more than 15 kilograms of cocaine hydrochloride. (*Id*. at 6.) Because he had at least two prior

state convictions for felony drug offenses, about which the United States had timely filed notice, Muhammad was sentenced to an enhanced statutory mandatory minimum of life imprisonment. (*Id.* at 2, 11-13; Doc. 254-2, Exhibits at 2; *see also* Doc. 208-1, Georgia Conviction Records.) According to the Bureau of Prisons, Muhammad has served 221 months in custody to date.

## Legal Framework

"[O]nce a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013); *accord Dillon v. United States*, 560 U.S. 817, 825 (2010). One statute that authorizes sentence modifications is 18 U.S.C. § 3582(c)(1)(A), which allows this Court, in certain circumstances, to grant a defendant's motion to reduce his term of imprisonment. Before filing the motion, however, the defendant must first request that the Bureau of Prisons file such a motion on his behalf. 18 U.S.C. § 3582(c)(1)(A). A court may grant the defendant's own motion for a sentence reduction only if it was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

If that exhaustion requirement is met, as in this case, a court may reduce a term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission's policy statement, in turn, provides that a court may reduce a term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;"

(ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.[1]

The applicable policy statement identifies various categories of "extraordinary and compelling reasons"—*e.g.*, medical conditions, age, family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)-(C). And it also recognizes the possibility that the Bureau of Prisons could identify other grounds that amount to "extraordinary and compelling reasons." U.S.S.G. § 1B1.13, cmt. n.1(D). As the movant, Muhammad bears the burden to establish his eligibility for a sentence reduction. *E.g.*, *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

## Argument

To grant a sentence reduction, this Court must determine that "extraordinary and compelling reasons" justify the reduction and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). Muhammad contends that the Court can decide for itself what reasons are "extraordinary and compelling" and that one such reason is the difference between the sentence he received in 2003 and the sentence he would have received if initially sentenced today, following enactment of Section 401 of the First Step Act. (Doc. 254, Motion at 3, 5-6.)

---

[1] The policy statement refers only to motions filed by the BOP Director, because it was last amended on November 1, 2018, and defendants were not entitled to file motions under § 3582(c)(1)(A) until the enactment of the First Step Act in December 2018. *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239; *cf.* 18 U.S.C. § 3582(c) (2012). In light of the statutory command that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A)(ii), and the lack of any plausible reason to treat motions filed by defendants differently from motions filed by BOP, the policy statement should apply equally to motions filed by defendants.

Muhammad's argument "rest[s] upon a faulty premise that the First Step Act somehow rendered the Sentencing Commission's policy statement an inappropriate expression of policy." *United States v. McCloud*, No. CR 405-018, 2020 WL 2843220, at *2 (S.D. Ga. June 1, 2020). His position "contravenes express Congressional intent that the Sentencing Commission, not the judiciary, determine what constitutes an appropriate use of the 'compassionate release' provision. Indeed, § 3582(c)(1)(A) as amended by the First Step Act *still* requires courts to abide by policy statements issued by the Sentencing Commission." *Id*. (emphasis in original; internal citation omitted). By enacting the First Step Act, "Congress in fact only expanded access to the courts; it did not change the standard." *United States v. Ebbers*, 432 F. Supp. 3d 421, 427 (S.D.N.Y. 2020). Although some courts have assumed they may define for themselves the reasons that permit compassionate release, there is "no reason to believe that the identity of the movant . . . should have any impact on the factors the Court should consider." *United States v. York*, Nos. 3:11-cr-76, 3:12-cr-145, 2019 WL 3241166, at *4 (E.D. Tenn. July 18, 2019).

Muhammad's argument also contravenes express Congressional intent in a second way. The First Step Act changed the requirements for imposing enhanced mandatory minimums for drug-trafficking offenses and the mandatory minimums themselves.[2] *See* First Step Act, § 401, 132 Stat. at 5220-21. But Congress decided that the amendment would only apply to offenses committed beforehand "if a sentence for the offense has not been imposed as of such date of enactment," *i.e.*, December 21, 2018. *See id*. at § 401(c), 132 Stat. at 5221. If subsequent legal developments constituted a extraordinary and compelling reason—they do not—"every inmate

---

[2] Muhammad was subjected to an enhanced mandatory minimum because he had at least two prior convictions for a "felony drug offense," as defined in 21 U.S.C. § 802(44). Today, the predicate offenses to justify an enhanced mandatory minimum must qualify either as a "serious drug felony" or a "serious violent felony," as defined in 21 U.S.C. § 802(57) and (58). The applicable statutory maximum for Muhammad's offense remains unchanged.

who might receive a reduced sentence today would be eligible for compassionate release, and Congress's decision not to make [Section 401 of] the First Step Act retroactive would be meaningless." *United States v. Cisneros*, No. CR 99-107, 2020 WL 3065103, at *3 (D. Haw. June 9, 2020). Because Congress explicitly chose not to make that change retroactive, it "did not intend that the change alone would justify an early release." *Id*. at *4; *accord United States v. Avery*, No. 2:07-cr-20040-2, 2020 WL 3167579, at *7 (W.D. Tenn. June 9, 2020) ("Although the Court has the discretion to consider that Avery might receive a lower sentence today, that fact, alone, is not sufficiently extraordinary and compelling to grant relief."); *United States v. Neubert*, No. 1:07-cr-166, 2020 WL 1285624, at *3 (S.D. Ind. Mar. 17, 2020) ("a reduction under § 3582(c)(1)(A) is not warranted because the disparity between [defendant's] actual sentence and the one he would receive if he committed his crimes today is not an 'extraordinary and compelling circumstance.' Instead, it is what the plain language of § 403 [of the First Step Act] requires."); *United States v. Nasirun*, No. 8:99-cr-367-T-27TBM, 2020 WL 686030 (Md. Fla. Feb. 11, 2020) (the fact that a life sentence imposed under then-mandatory guidelines might be lower today is not an extraordinary and compelling reason for release). Section 401 of the First Step Act is not an extraordinary and compelling reason for release recognized by § 1B1.13.

Muhammad's post-sentence rehabilitative efforts, however commendable, likewise fail to constitute an extraordinary and compelling reason. U.S.S.G. § 1B1.13, cmt. n.3; 28 U.S.C. § 994(t); *see also United States v. Wieber*, No. 3:14-cr-74-TBR, 2020 WL 1492907, at *3 (W.D. Ky. Mar. 27, 2020) (collecting cases). And, contrary to Muhammad's suggestion, the cost of his continued imprisonment is hardly extraordinary; the same costs are incurred for every federal inmate. (Doc. 254, Motion at 7-8.) "[C]ircumstances [that] are applicable to all inmates who are currently imprisoned . . . are not unique to any one person," and granting release on that basis

5

would be inappropriate or "the Court would then be obligated to release every prisoner." *United States v. Wright*, No. CR-16-214-04, 2020 WL 1976828, at *5 (W.D. La. Apr. 24, 2020).

Even if Muhammad had established an extraordinary and compelling reason for release, this Court would be required to consider the § 3553(a) factors. Muhammad's offense conduct was serious, in that he distributed more than 15 kilograms of cocaine. Granting him immediate release—or reducing his sentence to 240 months' imprisonment, as he suggests in the alternative—seems inconsistent with the totality of the § 3553(a) factors.[3]

## Conclusion

Because Muhammad has not established that his release would be consistent with U.S.S.G. § 1B1.13 and 18 U.S.C. § 3553(a), his motion should be denied.

Respectfully submitted,

J. Douglas Overbey
United States Attorney

By: *s/ Debra A. Breneman*
Debra A. Breneman
Assistant United States Attorney
PA Bar No. 93171
debra.breneman@usdoj.gov
800 Market Street, Suite 211
Knoxville, Tennessee 37902
(865) 545-4167

---

[3] If the Court nonetheless elects to grant compassionate release to Muhammad, the United States asks the Court accommodate the need to protect public health by quarantining him for at least 14 days before his release. If the Court determines that Muhammad should be released and so advises the parties, the Bureau of Prisons will place him in quarantine while the Court retains jurisdiction over this motion. If Muhammad has not displayed symptoms of or tested positive for COVID-19 for 14 days, the Court may then order release. If Muhammad were to test positive during that period, the undersigned attorney would notify the Court and seek to extend the release date until Muhammad tested negative or displayed no symptoms for 14 days, whichever is earlier. The United States also asks the Court, if granting release, to impose an additional term of supervised release "that does not exceed the unserved portion of the original term of imprisonment," 18 U.S.C. § 3582(c)(1)(A), and include a period of home confinement as a condition of that release, as authorized by U.S.S.G. § 5F1.2 and 18 U.S.C. § 3583(d).

6

## Certificate of Service

I certify that on July 29, 2020, this response was filed electronically and a true copy was sent to defendant by regular United States mail, postage prepaid, addressed as follows:

Rauf Muhammad
No. 30115-074
FCI Coleman Medium
P.O. Box 3000
Pine Knot, KY  42635

                                              *s/ Debra A. Breneman*
                                              Debra A. Breneman
                                              Assistant United States Attorney

7

Case 3:02-cr-00014-RLJ-CCS   Document 257   Filed 07/29/20   Page 7 of 7   PageID #: 293